U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

DEC 3 1 2008

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| DOROTHY SMITH | : | DOCKET NO. 2:05 CV 1455 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| UNITED STATES | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss the plaintiffs' claims that the Government negligently delayed a heart/lung transplant pursuant to Fed. R. Civ. P. 12(b)(1), filed by the United States [doc. 25]. The United States does not seek dismissal of the plaintiffs' claims that the United States negligently failed to return decedent Bobby Smith's phone calls requesting increased oxygen levels in March 2002. The plaintiffs filed an Opposition [doc. 27].

## FACTS & PROCEDURAL HISTORY

The Smiths brought suit against the United States arising from the use of a home oxygen supply prescribed to the decedent, Bobby Cornelius Smith by medical providers at the Veteran's Administration (hereinafter "VA").[1] On March 26, 2002, Mr. Smith called the Jennings VA Clinic to request an increase in his oxygen allotment, and stated that ROTECH[2] had locked his tank,

---

[1] Compl. ¶ 7 [doc. 1]. Bobby Smith was diagnosed with sarcoidosis in 1983, and this disease required the use of an oxygen tank from 2000 until his death in 2002. Def.'s Mem. in Support of Mot. to Dismiss Unexhausted Claims, at 2 [doc. 13].

[2] ROTECH Medical Corporation is the VA contractor that was responsible for maintaining Bobby Smith's oxygen supply. Def.'s Mem. in Support of Mot. to Dismiss

1

restricting his oxygen to three (3) liters per minute.³ The request was transmitted to Dr. Muriel Granville-Stoev, Bobby Smith's primary care physician at the Jennings VA Clinic, and she approved the request on March 28, 2002.⁴ Bobby Smith died on March 29, 2002, with the cause of death determined to be "severe pulmonary hypertension secondary to end-stage sarcoidosis."⁵

On March 25, 2004, the plaintiffs filed an administrative claim with the VA alleging that Bobby Smith's death was caused by a delay in responding to a telephone request to increase the oxygen flow from his home tank during the week of March 24, 2002. On May 5, 2005, the administrative claim was denied.⁶ The Smiths then filed a complaint with this court on August 12, 2005.⁷ The United States agrees that claims of negligence arising from the events of March 26, 2002 were properly filed with the VA and does not seek to dismiss those claims.

On June 11, 2006, Dr. Kenneth B. Smith issued a report in which he alleged, for the first time, that the acts of negligence prior to March 2002 contributed to or caused Bobby Smith's death.⁸ The report states that the VA's failure to evaluate Bobby Smith for a heart/lung transplant in August

---

Unexhausted Claims, at 3.

³ *Id.* Although Bobby Smith previously had unlimited access to his oxygen, his prescription only permitted three liters of oxygen per minute, since increased oxygen levels are often associated with adverse medical consequences to the pulmonary system. *Id.*

⁴ *Id.* at 3-4. The Smith household was notified of the approval by telephone on April 2, 2002, after Bobby Smith's death. *Id.* at 3.

⁵ *Id.* at 4.

⁶ *Id.* at 5.

⁷ [doc. 1].

⁸ Def.'s Mem. in Support of Mot. to Dismiss Unexhausted Claims, at 6.

2

2000 constitutes negligence.[9] Dr. Smith's report does not reference any negligence related to the March 2002 oxygen tank incident.

On February 19, 2008, this Court heard oral argument and orally granted the Government's motion to dismiss unexhausted claims [doc. 13]. The Court dismissed claims alleging that the VA had negligently delayed a heart/lung transplant by failing to evaluate Mr. Smith in August 2000, finding that those claims had not been administratively exhausted as is required by the Federal Tort Claims Act ("FTCA") and were therefore not properly before this Court.

Following the Court's dismissal of the claims against the Government that the VA had negligently delayed a heart/lung transplant, the plaintiffs filed a supplemental administrative complaint with the VA on January 18, 2008.[10] On March 26, 2008, the VA denied the supplemental administrative complaint. The plaintiffs filed a first amended and restated complaint, which contains allegations that the VA doctors failed to properly evaluate Mr. Smith, and accordingly, failed to place him on a waiting list for a heart/lung transplant.[11] The amended complaint further alleged that the plaintiffs did not learn of the VA's negligent actions until June 2006 through Dr. Smith's report, after which the new claim was timely presented to the VA.[12] The petition further states that in August 2000, Mr. Smith was told that he would be a good candidate for a heart/lung transplant.[13]

---

[9] *Id.*

[10] Def.'s Mem. in Support of Mot. to Dismiss [doc. 25-2].

[11] First Amended and Restated Complaint [doc. 24].

[12] *Id.*

[13] *Id.*

3

## RULE 12(b)(1)

A party may move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Whether the FTCA's statute of limitations is jurisdictional is "appears to be undecided" in the Fifth Circuit. *Johnson v. United States*, 460 F.3d 616, 619 (5th Cir. 2006) (noting that summary judgment on the issue of the FTCA's statute of limitations is appropriate). Thus, given the uncertainty within the Fifth Circuit and the fact that the parties submitted evidence, this Court shall convert the Rule 12(b)(1) motion to a motion for partial summary judgment under Rule 56(c). A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## LAW

The subject matter jurisdiction of federal courts over tort liability of the United States rests upon the waiver of sovereign immunity under the FTCA. Pursuant to the FTCA, the United States has waived its sovereign immunity, subject to the plaintiff's compliance with procedural requirements. *See* 28 U.S.C. §§ 2401, 2675(a). When plaintiffs brings suit under the FTCA in federal court, they may not base any part of the tort action on claims not presented to the agency. *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980). Under 28 U.S.C. § 2675(a):

> [A]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to

4

> make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim...

Thus, the plaintiff is required to first present the claim for administrative review and wait six months or receive a final denial from the agency prior to filing suit in federal court.

Aside from requiring that claims be administratively exhausted, the FTCA also has a two-year statute of limitations. 28 U.S.C. § 2401(b) (stating that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"). The FTCA does not define when accrual occurs, and the general rule is that a "tort action accrues at the time of a plaintiff's injury." *United States v. Kubrick*, 444 U.S. 111, 120 (1979). In FTCA medical malpractice claims, however, the Supreme Court articulated a "'discovery rule,' under which the time starts to run when the plaintiff has the information necessary to discover 'both his injury and its cause.'" *Johnson*, 460 F.3d at 621 (quoting *Kubrick*, 444 U.S. at 120).

The Fifth Circuit has stated that the plaintiff "need not know the legal or medical significance of an act or an injury for the cause of action to accrue." *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983). The statute of limitations begins to run when the plaintiff has "knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment and injury." *Id.*

In *Johnson*, the plaintiff brought suit under the FTCA for negligence surrounding the birth of her daughter, who was diagnosed with cerebral palsy after being deprived of oxygen at birth. *Johnson*, 460 F.3d 616. Ms. Johnson's daughter was born on April 20, 1994, it was first suggested

5

by a pediatrician that she may have cerebral palsy on November 21, 1994, a doctor said the daughter "most likely" had cerebral palsy caused by low oxygen on February 3, 1995, and in April 1995, Ms. Johnson received a definitive diagnosis of cerebral palsy for her daughter. *Id.* at 617-18. Ms. Johnson did not file an administrative complaint until May 10, 2001. *Id.* at 619.

The Fifth Circuit affirmed the district court's dismissal of Ms. Johnson's claims as time-barred. Under *Kubrick* and *Harrison*, the Fifth Circuit found that a reasonable person in Ms. Johnson's position would have been aware of enough facts to trigger the statute of limitations more than two years before she filed her claim, noting that plaintiffs with knowledge of the injury have a "duty to inquire into the medical and legal community" and "to seek professional advice" regarding the causal connection between the injury and any alleged negligence associated with her birth. *Id.* at 622. The Fifth Circuit concluded that Ms. Johnson knew of enough facts (e.g., that her daughter had cerebral palsy and that the likely cause was something that happened at birth) to trigger her duty to seek professional advice. *Id.* at 623. Accordingly, because Ms. Johnson failed to file an administrative complaint until 2001, almost six years after she was on notice of sufficient facts that would cause a reasonable person to seek professional advice, her claims were time-barred.

The Fifth Circuit permits equitable tolling when plaintiffs have "actively pursued judicial remedies but filed a defective pleading." *Clymore v. United States*, 217 F.3d 370, 375 (5th Cir. 2000) (citing *Perez v. United States*, 167 F.3d 913 (5th Cir. 1999)). The Fifth Circuit also permits equitable tolling when the plaintiff has been induced or tricked by the defendant into allowing the filing deadline to pass. *Perez*, 167 F.3d 918. Furthermore, "[o]ne thread of equitable tolling doctrine has recognized the appropriateness of suspending the statute of limitations when there has been fraudulent concealment of information that the plaintiff would need to file correctly." *Id.* In *Perez*,

the Fifth Circuit applied equitable tolling, finding that "there is a clear causal connection between the government's failure to follow its regulations and the plaintiff's filing of an improper complaint." *Id.* at 919 (emphasizing that equitable tolling is available in limited cases "to prevent a plaintiff from unjustly losing a claim vigorously pursued").

## ANALYSIS

The United States files this motion to once again seek the dismissal of claims of negligence arising from failure to evaluate Mr. Smith for a heart/lung transplant. This time, the United States argues that these amended allegations were not timely presented to the VA and are therefore barred. The plaintiffs' newly-alleged claim of negligence arising from failure to evaluate Mr. Smith for a heart/lung transplant should be dismissed as time-barred unless a.) the claim did not accrue until the plaintiffs' expert issued his report in August 2006, making the administrative complaint of January 2008 timely, or, alternatively, b.) if the Court finds that equitable estoppel applies.

### A.) Claim Accrual

The Government argues that it should not have to defend against any claims of negligence arising prior to the March 2002 incident because, although the plaintiffs have now administratively exhausted their heart/lung transplant claim, the claim was brought outside of the FTCA's two-year statute of limitations and is therefore prescribed. Noting that the time period does not begin to accrue until the plaintiff has knowledge of the factual predicate for the malpractice claim, the Government argues that Mrs. Smith had knowledge of all of the facts underlying this new claim when her husband died in 2002. The Government argues that the medical records and subsequent 2006 expert report did not add any factual information to the record.

In her deposition, Mrs. Smith stated that she was aware that the doctors had discussed the

possibility of a transplant and the VA staff in Jennings initiated paperwork for a transplant, but that there were no definite plans at the time of Mr. Smith's death.[14] Mrs. Smith also testified that she was aware that without the transplant, Mr. Smith's life span was projected to be five years.[15] She also testified that the only day she did not accompany her husband to his doctor's visit was when she waited at home for a phone call from a VA nurse regarding transplant.[16] In February 2002, Mrs. Smith completed the paperwork for Mr. Smith's heart/lung transplant and submitted it to the VA.[17] According to Mrs. Smith, on February 14, 2002, Mr. Smith was released from the hospital and she was instructed by the VA that the next step would involve taking Mr. Smith to the Houston VA to finish processing him for the transplant.[18] In accordance with doctor's instructions, they purchased a treadmill and Mr. Smith began exercising to prepare for his transplant.[19] Mr. Smith then died on March 29, 2002 while awaiting his transplant.

Thus, given Mrs. Smith's involvement with her husband's medical care and the transplant process, the Government argues that she was aware of the facts underlying the 2006 expert report that suggested had the transplant occurred sooner, Mr. Smith's chances of survival would have been greater.

---

[14] Def.'s Ex. 1 (Smith Dep.), pp. 20-21, 29, 36, 82. Mrs. Smith testified that in 2000 the VA began looking into a heart/lung transplant. *Id.* at 21.

[15] *Id.* at 88.

[16] *Id.*

[17] *Id.* at 82. At this point, Mr. Smith's private physician, Dr. Thompson, contacted the VA and performed qualifying tests on Mr. Smith. *Id.* at 87-88.

[18] *Id.* at 89.

[19] *Id.* at 91.

8

The Smiths maintain that they were unaware that "the cause of Mr. Smith's death was the failure of the Alexandria VA to assess Mr. Smith for transplantation in 2000 until their expert reviewed the medical records over the summer of 2006." Moreover, the plaintiffs argue that Mrs. Smith was not sophisticated as to medical remedies, options, or advances, and instead relied completely on the VA and was "blamelessly ignorant."[20]

This Court finds that the plaintiffs did not present the claim to the VA within two years of its accrual. Given Mrs. Smith's extensive involvement with the transplant process, including accompanying her husband to all but one doctor's appointment, filling out the paperwork for the transplant, and that he still had to go to Houston to finish being processed for transplant, Mrs. Smith had "knowledge of the facts that would lead a reasonable person to conclude that there was a causal connection between the treatment and the injury," as is the standard for whether a medical malpractice action under the FTCA has accrued. Accordingly, Mrs. Smith's claims accrued well before the expert report of August 2006, and because those claims were not timely presented to the VA for administrative review, they are barred unless equitable estoppel applies.

### B.) Equitable Estoppel

The plaintiffs oppose the Government's motion to dismiss, arguing that the Government had in its possession all of Mr. Smith's VA medical records, they did not have knowledge that Mr. Smith's death was caused by his failure to obtain a heart/lung transplant until their expert reviewed the records in summer 2006. The Smiths maintain that because the injury was unknown or unknowable at the time of filing the administrative complaint, the Smiths should not be bound by

---

[20] Mrs. Smith's deposition testimony severely undercuts this argument. She provides an extensive background of her husband's battle with sarcoidosis and his treatment, in addition to actively filling out the paperwork for a transplant.

9

the two-year statute of limitations.[21] The plaintiffs also argue that the VA had notice of this claim from the initial administrative complaint.[22]

The Government rejects the plaintiffs' argument that the Government withheld records until this litigation was initiated. As noted at oral argument, the plaintiffs' first administrative claim pertained only to the small time frame in late March-early April 2002 where the level of tank oxygen was in question. The VA investigated this claim and did not include Mr. Smith's complete medical records because they were not implicated.

This Court finds that neither of the equitable estoppel exceptions apply. The plaintiffs did not file a defective pleading. Furthermore, there is no evidence that the Government withheld records in bad faith or in violation of any duty. Moreover, even if the plaintiffs did not receive the records until 2006 through some fault of the Government, Mrs. Smith nonetheless had the factual knowledge underlying the heart/lung transplant at the time of her husband's death. Accordingly, equitable estoppel does not apply.

## **CONCLUSION**

Because the plaintiffs' claim against the Government for negligence surrounding the heart/lung transplant was not presented to the VA within two years after it accrued, and because equitable estoppel does not apply, this Court grants partial summary judgment in favor of the defendants and dismisses the plaintiffs' newly-alleged claim of negligence arising from failure to

---

[21] The Smiths argue that they were unable to obtain Mr. Smith's medical records until July 2002, and those records did not include any information from Mr. Smith's August 2000 treatment.

[22] This Court ruled from the bench on February 19, 2008 that the plaintiffs failed to present this claim to the VA.

evaluate Mr. Smith for a heart/lung transplant; accordingly,

IT IS ORDERED that the Motion to Dismiss the plaintiffs' claims that the Government negligently delayed a heart/lung transplant pursuant to Fed. R. Civ. P. 12(b)(1), filed by the United States, [doc. 25] is hereby GRANTED,

IT IS FURTHER ORDERED that the plaintiffs' claims that the Government negligently delayed a heart/lung transplant are hereby DISMISSED.

Lake Charles, Louisiana, this __31__ day of __July__, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE